[No. 3968.]

LIGGETT, COUNTY CLERK, v. ORR ET. AL.

ELECTIONS—COMMITTEES—AUTHORITY OF CHAIRMAN.

Where a political convention appointed a number of members of the central committee for a county, and authorized the chairman and secretary of the committee to appoint other members of the committee from precincts of the county from which members had not been appointed, the authority was a joint one, to be exercised by the chairman and secretary together, and the chairman alone had no authority to appoint. And where a majority of the members of the committee as then constituted met and authorized an executive committee to call a convention to nominate a county ticket, a subsequent meeting of members of the committee, a majority of whom had been appointed by the chairman alone, could not rescind the former action of the committee, and a convention called by the subsequent meeting was not a legal convention of the party. A ticket nominated by the convention first called was entitled to be printed on the official ballot under the name and emblem of the party in preference to one nominated by a convention called by the subsequent meeting of the committee.

*Upon Review from the District Court of El Paso County.*

ACTION by respondents in the court below to review the ruling of petitioner, in refusing to certify them on the official ballot as the nominees of the Silver Republican party for the county of El Paso, and in holding that another set of nom-

inees was entitled to be so certified, which ruling was reversed
by the district court, from which judgment petitioner brings
the case here for review.

Messrs. HALL, PRESTON & BABBITT and Mr. GEORGE W.
MUSSER, for petitioner.

Mr. J. W. SHEAFOR and Mr. A. M. NICHOLAS, for respond-
ents.

MR. JUSTICE GABBERT delivered the opinion of the court.

In the latter part of July, 1898, a majority of the members
of the county central committee of the Silver Republican
party, as then constituted, for the county of El Paso, met
and appointed an executive committee, the members of which
were empowered to fix the apportionment of delegates from
the various precincts, and call a convention for the purpose
of making county nominations.   This committee appointed
a subcommittee, who apportioned the delegates and made
the call for the county convention.   In pursuance of this call,
a convention was regularly held, and the parties adjudged
by the county clerk entitled to be certified upon the official
ballot, duly nominated.   Subsequent to the date when this
call was made, and before the convention in pursuance thereof
was held, another meeting of the county central committee
was held, at which there were present about forty-six persons,
acting as members of this committee.   It appears that all
who participated in the proceedings of this meeting, but thir-
teen, had been appointed by the county chairman.   At the
last regular convention of the party held in 1897, the chair-
man and secretary of the county central committee were
authorized to appoint members of this committee from the
precincts of the county in which members had not been
selected by the convention, or in which vacancies might
occur.   This authority was a joint one—that is, such appoint-
ments were to be made by the joint act of the chairman and

secretary, and not by one. Those present at this last meeting of the central committee who were appointed by the chairman only, had no authority to act, and the committee as constituted at this meeting was illegal, and, therefore, the attempt through such channel to rescind the action of the meeting held in July, and to fix another apportionment and another time and place for holding a convention, was without force or effect. The respondents were nominated at the convention held in accordance with the action taken by this illegal and unauthorized committee. The convention held in pursuance of the action of the committee meeting held in July, was the regular one, and its nominees are, therefore, entitled to a place upon the official ballot, under the name and emblem of the party it represented.

The judgment of the district court is reversed, and the cause remanded, with directions to sustain the ruling of the county clerk and recorder.

*Reversed and remanded.*

CAMPBELL, C. J., dissenting.

I cannot concur in the conclusion reached by the majority, and a recital of the salient facts, most of which are undisputed, is the best argument for my position.

In 1897 the party duly held its county convention, and, *inter alia*, elected twelve or fourteen members of the county central committee to act for the ensuing year. The committee was to be composed of one member for each precinct of the county, and as there were seventy-one precincts this partial selection by the convention left a number of vacancies which the chairman and secretary of the central committee, acting jointly, were authorized to fill.

On July 27, 1898, the central committee met and appointed an executive committee, to which was delegated the usual powers possessed by the committee itself in calling and arranging for conventions. Prior to, and up to the time of, this meeting only thirty-five or forty members had been

selected, and this number was made up of the twelve or fourteen elected by the convention itself and those thereafter appointed by the joint action of the chairman and secretary. The secretary's minutes show that at this meeting twenty-three members, out of the thirty-five or forty competent to sit, were present and participated. The rights of the set of nominees represented by petitioner spring from the acts of the executive committee appointed at this meeting.

Thereafter a meeting of the central committee was duly called by its chairman to meet at Cripple Creek on the 26th of August, and in response thereto forty-six members were present, and the list of nominees represented by respondents base all their rights upon the proceedings at this meeting.

In the opinion it is stated that of the forty-six who participated all but thirteen were appointed by the county chairman alone, and solely upon this ground the majority of this court has held invalid the acts of this meeting rescinding the doings of the executive committee.

From a careful examination of the record I find no authority for this statement, and it is directly against the finding upon that point made by the district court. For the purposes of this case it may be conceded that the finding below was based upon conflicting evidence, though I think if the evidence be fairly considered as a whole, as it should be, all of it supports the finding of the district court. The only justification for the foregoing statement is that upon cross-examination McKnight, chairman of the county committee, testified that all but about ten who were present at this meeting had been appointed by him; but taking his entire testimony together, in connection with the other testimony in the case, it is clear to my mind that what he intended to say was that all but about ten (the exact number being twelve or fourteen), who were selected by the convention itself, had been appointed by him and the secretary after the convention adjourned. Corroborating this testimony is that of several witnesses who swore that they were present at this meet-

VOL. XXV—30

ing, and that there were forty-six members of the committee present and participating.

It also appears from the testimony of Dutcher, the secretary of the committee, who was a witness called by the respondents, and who was antagonistic to the faction represented by McKnight, that a large number of appointments had been made by him and the chairman acting conjointly. When presented with the list of the committeemen present on August 26, which list is in the record, Dutcher questioned the credentials of only three of them, and they were included in the six, which latter number was the total number appointed by McKnight between July 27 and August 26; the other three of the six thus appointed Dutcher himself testified that he approved of.

Dutcher had the books and records of the committee in his possession, and it would have been entirely within his power, if such was the fact, to produce proof that any of the other forty-three members were not *bona fide* members. That he did not do so is a circumstance tending strongly to show that no such proof was in his possession. So that upon an impartial review of the testimony upon this point the fact is apparent that of the forty-six persons present at the meeting of August 26, not more than six (and really only three) were improperly there. Forty or forty-three out of a total of seventy-one members of the committee, if the membership had been complete, were thus present at this meeting, and participating in its acts, and, under the ruling of the majority in *Twombly v. Smith, supra,* they had full power to set aside and declare void all previous acts of the committee, acting as a central body, or by its executive committee.

There is in the record a list of the members present at the meeting of the central committee of July 27, and a comparison of this list with that of the members present at the August meeting discloses the fact that of the twenty-three present in July, thirteen, or a majority, were present at the August meeting. There is no question but that these thirteen were *bona fide* members. The petitioner concedes this,

because they were present and participated in the meeting of the county central committee in July and constituted a majority of the members present at that meeting on whose acts petitioner bases his entire claim.

If, however, there is a conflict in the testimony as to the composition of the meeting of August 26, it seems to me the finding of the district court should not be disturbed. The court specifically found that there were at least forty *bona fide* members then present, and the record abundantly supports the finding.

For another reason it is clear to my mind that the meeting of the committee in August was competent to act as it did. No question is raised concerning the regularity of the call therefor, or as to the notice given to its members. The rule with reference to the authority of a committee to act should be, and is, analogous to that governing conventions; and in the case of *Phillips v. Smith, ante,* p. 456, we held that the lawful delegates to a convention who respond to the party call are competent to act, even though a majority who are entitled to participate may not attend; and that a majority of those who do respond constitute a quorum for the transaction of the business for which the convention was called. The thirteen members of the committee who did attend were therefore competent to act, and it appearing beyond question that the action of the committee at the August meeting was unanimous, the vote thereat rescinding all its own previous actions and those of the executive committee in calling the convention, was valid and lawful, and this makes the McKnight ticket the only regular one of the party. If the act of twenty-three members of the committee in July was authorized, certainly the act of the thirteen in August was equally binding. For, if, as we held in the *Phillips* case, *supra,* the acts of a convention composed of sixty-five or seventy delegates can be entirely set aside at an adjourned meeting of the same convention when only twenty-nine delegates are present and participating, I fail to see why the application of the same principle does not make valid the acts of the central committee of Au-

gust 26 when thirteen delegates undid the previous acts of the twenty-three delegates at the meeting in July. In the former case we strictly applied the principle, and there is no legal or valid reason why it should not be applied here.

For an additional reason the ticket represented by the respondents is entitled to the use of the party name and emblem. It appears that there were two factions of the Silver Republican party in this county corresponding to the two factions represented in the state convention of the party, known as the "Blood" and "Broad" factions, whose rights with respect to the use of the party name and emblem have been determined in this court in the case of *Whipple v. Broad, ante,* p. 407, in favor of the Broad faction. The nominees represented by petitioner belong to the Blood faction; by respondents, to the Broad faction; and each repudiates any connection with, and disclaims any authority over them by, the state officials of the other faction. This, of itself, to my mind, estops the list of nominees represented by petitioner to any right or benefit of the party name or emblem, which has been awarded by this court to the state faction of the party antagonistic to that to which said nominees belong.

As my reasons for this conclusion have been fully stated in the case of *Twombly v. Smith, supra,* they need not be repeated here. The nominees represented by respondents should be entitled to the use of the name and emblem of the party in El Paso county.